No. 30,166.

A. A. HAMEL, *Appellee*, v. I. M. NYE et al., *Appellants*.

(5 P. 2d 1075.)

Opinion filed December 12, 1931.

*Charles G. Yankey, John L. Gleason* and *Kenneth K. Cox,* all of Wichita, for the appellants.

· *Clyde E. Souders* and *Otto R. Souders,* both of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from an order appointing a receiver in an action to foreclose a mortgage on certain property in Wichita.

It appears that in 1929 one John I. Graham owned an apartment house located on four lots on Fairmount avenue in Wichita. The property was covered by a first mortgage for $20,000 held by the Fisher-Moore Investment Company. On September 11, 1929, Graham and wife conveyed the property to one R. M. Sheppard. Some months later, on April 2, 1930, Sheppard and wife executed to this plaintiff, A. A. Hamel, their promissory note for $10,000 and gave a second mortgage on the property as security. Some days later, April 11, 1930, Sheppard and wife conveyed the property to the Wichita Development Company, subject to the first and second mortgages, which the grantee assumed and agreed to pay. On December 29, 1930, the Wichita Development Company conveyed the property to the defendant I. M. Nye.

It further appears that default has been made in the payment of an installment of $600 on the principal and $582 interest due on the principal indebtedness on January 1, 1931, secured by the first mortgage. Neither have the taxes been paid on the property for the year 1930, in consequence of which plaintiff, on January 24, 1931, was compelled to pay the installment of principal and interest overdue, together with the accrued interest thereon, to satisfy the just claim of the first mortgage and to prevent foreclosure of the first mortgage.

It further appears that the indebtedness of $10,000 secured by the second mortgage, together with interest thereon in the sum of $216.76, fell due on January 31, 1931, and default was made in the payment thereof.

Under the terms of the second mortgage, its makers, R. M. Sheppard and wife, stipulated that—

"On default of the payment of any part of the principal or interest of any one of said notes at maturity, or upon the failure to pay any amounts due under the first mortgage when due, or upon the failure to pay any lawful assessment upon said premises when the same shall become due and payable,

or upon the failure to perform any of the requirements of the first mortgage, each and all of the several amounts herein secured shall immediately become due and payable, and this instrument shall be subject to foreclosure according to law."

Plaintiff's petition set out the foregoing facts in detail, and alleged that on January 24, 1931, he had duly notified defendant I. M. Nye and Clark C. Nye, her husband, that on that date he was declaring the second mortgage due under its terms, because of default in payments of taxes, principal and interest as set out above. Plaintiff likewise alleged that the property covered by these mortgages was probably insufficient to satisfy those encumbrances; that R. M. Sheppard and wife, makers of the second mortgage note, were insolvent; that the interest on the mortgage indebtedness was constantly increasing; and that all overdue interest was bearing ten per cent, and that—

"The said property is not worth more than the amounts of the first and second mortgage and the interest and taxes now due thereon. That the said property is not held by the present owners in good faith, but with the sole intention of receiving the said rents from the property and without any intention of keeping up the taxes or any repairs on the said building."

Plaintiff prayed judgment for the amount due on the second mortgage and for reimbursement of the interest and installment of principal overdue on the first mortgage, which plaintiff had been compelled to pay to avert foreclosure of the first mortgage. He also prayed foreclosure of his second mortgage, and meantime that a receiver be appointed to take charge of the property and hold and manage the same under direction of the court.

The petition was verified. Plaintiff served on defendants Nye and husband a notice of application for appointment of a receiver. This application was presented on oral and other evidence before the presiding judge on February 7, 1931. It was then shown that the facts alleging default in payments of principal, interest and taxes, and the allegations concerning the mortgage obligations and their execution were not in controversy. The controversial inquiry ranged about the question whether the property would probably be sufficient to satisfy the encumbrances. It was shown that Clark C. Nye, as agent for his wife, who held the title to the property, collected the rents which amounted to $535 per month when all the apartments were occupied. The rents collected during January and the first seven days of February, 1931, were $500, and the operating

expenses such as fuel, water, light and incidentals were $150 per month. The unpaid taxes for 1930 were $1,200. It was not shown whether the deed conveying the title to I. M. Nye bound her to assume and pay the mortgages. Some showing was made that she was likely to come into a good deal of money from her father's estate in Eureka, that she owed that estate $7,000 or $8,000, but that there might be $30,000 net coming to her therefrom.

A real-estate dealer familiar with Wichita property values testified that the property was worth from $35,000 to $37,500. The original owner, John I. Graham, who built the property in 1929, testified that the lots cost him $2,000 and the building about $28,400. He was a contractor and could build for less than people in general, but he also testified that he could make a five per cent profit or a little more by constructing buildings like the one in controversy for anybody who had suitable lots. At the conclusion of the hearing on February 7, 1931, at which Mrs. I. M. Nye herself was not present, the record reads:

"BY THE COURT: I tell you what I am going to do in this case. I am going to pass it for two weeks and in the meantime—is your wife going to be back?

"MR. NYE: Yes, she will be back before two weeks.

"THE COURT: You be back up here two weeks from to-day and make a further report on it. Possibly you can report if there is anything further done in the estate at Eureka. I will set this down for February 21 and in the meantime you may have some rent and we will see what you do about it. It will depend somewhat on what kind of report is made here two weeks from to-day, whether or not a receiver will be appointed in the case."

On February 21, when the hearing was reconvened, no showing was made as to what defendants had done with any rents collected since February 7, nor did defendant give any intimation that expected funds from her father's estate would soon be available, and that she was disposed to use them to apply on plaintiff's claims in this action; so the court on the verified petition and the evidence already before it made an order appointing a receiver to take possession of the property, to collect the rents, and pay out moneys for its maintenance and operation "until the sale of said premises under foreclosure in this action or until such time before said sale as the court may discharge said receiver."

From this order and its incidents the defendant I. M. Nye appeals, contending that the evidence shows no occasion for the appointment of a receiver.

Touching that contention the evidence was as outlined above.

The encumbrances, together with continually accruing interest, delinquent taxes and penalties, already have mounted approximately to the value of the property at fair sale. Under foreclosure sale where, until the end of the redemption period of at least six months and perhaps eighteen months, a purchaser could not be certain whether he would get what he was buying or not, it is a matter of common knowledge that property sells at a ruinously low price unless the mortgagee himself can and will buy it in for the full amount of his judgment. In this case the verified allegation of the petition that the mortgagors are insolvent is not controverted. So far as this record goes this defendant has not bound herself to pay anything. She did show that sometime or other she is likely to come into a good deal of money or property from her father's estate, but she made no showing that she intended to devote those prospective funds to the satisfaction of the encumbrances on the property. On the contrary, the fact that the taxes had been permitted to become delinquent and that defendant was pocketing the rents, paying only the necessary operating expenses, justified the inference that defendant intended to get all she could out of the apartment house while paying out just as little as possible, letting the interest and taxes go unpaid, to the serious prejudice of the plaintiff.

These considerations lead us to conclude that the trial court's order appointing a receiver was justified. The pertinent statute provides that a receiver may be appointed in an action in foreclosure where the condition of the mortgage has not been performed and the property is probably insufficient to discharge the mortgage debt. (R. S. 60-1201.) In accord with this statute the appointment of a receiver under circumstances not materially different from those in the case at bar was upheld in *Bank v. Dikeman,* 98 Kan. 222, 157 Pac. 1177. (See, also, *Beverly v. Barnitz,* 55 Kan. 466, 480, 42 Pac. 725; *Howard v. Tourbier,* 98 Kan. 624, 160 Pac. 1144; *Dunfield v. Mouse,* 120 Kan. 232, 243 Pac. 274; Id. 120 Kan. 601, 244 Pac. 843; and Anno.—Right of Mortgagee to Receiver, 26 A. L. R. 33, *et seq.)*

The judgment is affirmed.